UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------X
RICHARD ABONDOLO, as Chairman of the
Board of Trustees of UFCW LOCAL 342
HEALTH CARE FUND, RICHARD
ABONDOLO, as Chairman of the Board of
Trustees of UFCW LOCAL 342 ANNUITY
FUND a/k/a UFCW LOCAL 342 SAVINGS and
401(K) PLAN, RICHARD ABONDOLO, as
Chairman of the Board of Trustees of UFCW
LOCAL 342 SAFETY, EDUCATION,
CULTURAL FUND, and RICHARD
ABONDOLO, as Chairman of the Board of
Trustees of UFCW LOCAL 342 LEGAL FUND,

**MEMORANDUM OF
DECISION AND ORDER**
11-CV-2231 (ADS)(ARL)

                Petitioners,

        -against-

JERRY WWHS CO., INC. d/b/a WEST
WASHINGTON MEATS,

                Respondent.
---------------------------------------------------------X

**APPEARANCES:**

**Law Office of Ira D. Wincott**
*Attorneys for the petitioners*
166 East Jericho Turnpike
Mineola, NY 11501
      By: Ira D. Wincott, Esq., Of Counsel

**Douglas J. Pick, P.C.**
*Attorneys for the respondent*
350 Fifth Avenue, Suite 3000
New York, NY 10118
    By: Eric C. Zabicki, Esq., Of Counsel

**SPATT, District Judge**.

    This action arises from a petition ("Petition"), filed by Richard Abondolo as Chairman of the

Board of Trustees for UFCW Local 342 Health Care Fund ("Health Care Fund"); UFCW Local

342 Annuity Fund a/k/a UFCW Local 342 Savings and 401(K) Plan ("401(K) Plan"); UFCW

1

Local 342 Safety, Education, Cultural Fund ("SEC Fund"), and the UFCW Local 342 Legal Fund ("Legal Fund") (collectively the "Petitioners" or the "Funds"), seeking to confirm an arbitration award ("the Arbitration Award") entered against respondent, Jerry WWHS Co., Inc. d/b/a West Washington Meats ("the Respondent") following an arbitration hearing ("the Underlying Arbitration").

The Petitioners allege confirmation is proper pursuant to Section 9 of the Federal Arbitration Act, 9 U.S.C. § 9 ("Section 9"), Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, and Section 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. The Respondent cross moves to dismiss the Petition and/or vacate the Arbitration Award on the ground that its filing of a general assignment for the benefit of creditors imposed a de facto stay on the Underlying Arbitration and the instant proceeding. The Respondent also argues that it was not properly served in this action. For the reasons stated below, the Court denies the Respondent's motion to dismiss the Petition and/or to vacate the Arbitration Award and confirms the Arbitration Award.

## I. BACKGROUND

Richard Abondolo is the Chairman of the Board of Trustees of the Funds. Three of the funds—the 401(K) Plan, the SEC Fund, and the Legal fund—are employee benefit plans within the meaning of 29 U.S.C. § 1002(2) and the Health Care Fund is an employee welfare benefit plan within the meaning of 29 U.S. § 1002(a). Respondent West Washington Meats is an employer who is party to a collective bargaining agreement ("the CBA") with UFCW Local 342 ("the Union"). Pursuant to the CBA, the Respondent was required to make certain contributions to the Funds in a timely manner, and, if the Respondent failed to make the requisite contributions, the CBA provided that the Funds were entitled to recover the outstanding

2

contributions, plus interest, liquidated damages, reasonable attorney's fees, court costs, and disbursements. The CBA also mandates binding arbitration of disputes arising between the Union and/or the Funds and the Respondent.

On April 6, 2011, the Respondent executed an assignment for the benefit of creditors, assigning its estate to Douglas J. Pick ("Assignee"). (Deed of Assignment, Pick Aff., Ex. B.) The Deed of Assignment was filed in the Office of the Clerk of Kings County in New York on April 11, 2011. The Respondent's estate is currently being administered by the Assignee under the supervision of the New York State Supreme Court, Kings County, in an proceeding titled <u>In the Matter of the General Assignment for the Benefit of Creditors of: JERRY WWHS CO., INC., d/b/a/ WEST WASHINGTON MEATS, Assignor –to-DOUGLAS J. PICK, Assignee,</u> Index No, 8288/2011 ("the Assignment Proceeding").

Also on April 6, 2011, the Funds sent a letter advising the Respondent that an arbitration had been scheduled for April 27, 2011 to address its "failure and/or refusal to make proper and timely contributions and remit required reports to the [Funds] [for] April 2011". (Friedman Aff., Ex. A.) The arbitration took place as scheduled on April 27, 2011 (the "Underlying Arbitration") before arbitrator William Clarke ("Arbitrator Clarke"). The Respondent failed to appear at the arbitration.

After considering the evidence presented at the hearing, Arbitrator Clarke found that the Respondent violated the CBA by failing to make contributions to the Funds for the period of April 1, 2011 through April 30, 2011 and awarded a total of $5,828.90 in damages to the Funds, including $3,472 for unpaid contributions; interest in the amount of $52.08; liquidated damages in the amount of $704.82; attorneys' fees in the amount of $800; and arbitration fees in the amount of $800 ("the Arbitration Award"). (<u>See</u> Compl., Ex. A.)

3

On April 28, 2011, the Petitioners' counsel sent a letter to the Respondent demanding compliance with the terms of the Arbitration Award, which to date, the Respondent has failed to do. (See Friedman Aff., Ex. B.) Thus, the Petitioners commenced this action on May 9, 2011 seeking confirmation of the Arbitration Award, plus attorney's fees and costs incurred in bringing this action.

On May 12, 2011, the Summons and Petition were served on the Respondent through the New York Secretary of State at the Respondent's former address. According to the Assignee, because the Respondent was no longer a functioning business, the Assignee had arranged for the Respondent's mail to be forwarded to him through the postal service. Because of the delay, the Assignee did not receive the Summons and Complaint until June 1, 2011.

On June 2, 2011, the Respondent filed a motion to dismiss the Petition pursuant to Federal Rule of Civil Procedure 12 on two grounds. First, the Respondent contends that the Petition is subject to dismissal for insufficient service of process because the Petitioner effectuated service through the New York Secretary of State despite knowing that the address for the Respondent on file was no longer valid. Second, the Respondent seeks the dismissal of the Petition on the basis that the instant proceeding, and the Arbitration Award itself, are not valid because the general assignment for the benefit of creditors imposed a de facto stay on all proceedings against the Respondent, and therefore the Petitioners should have submitted their claim for unpaid contributions to the Assignment Proceeding. Although not characterized as such by the Respondent, because the Respondent is seeking a determination as to the arbitrability of the underlying dispute in light of the general assignment for the benefit of creditors, the Court construes the Respondent's motion to dismiss also as a motion to vacate the Arbitration Award.

4

The Court will address the merits of the Respondent's motion, as well as the Petition to confirm the Arbitration Award separately.

## II. MOTION TO DISMISS THE PETITION AND/OR VACATE THE ARBITRATION AWARD

### A.  Whether the Petition Should be Dismissed for Insufficient Service of Process

The Respondent asserts that the Court should dismiss the Petition for insufficient service of process because the Petitioners effectuated service on the Respondent through the New York Secretary of State, rather than through the Assignee.  The Court disagrees.

Service of process on a corporation within a judicial district of the United States may be completed either by serving a copy of the summons and the complaint, or in this case the petition, "to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process . . . [and] mailing a copy of each to the defendant"  or by "following the state law for serving summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made."  Fed. R. Civ. P. 4(e)(1).  Here, where the case has been brought in the Eastern District of New York, service of the complaint on the Respondent is governed by New York law.

Under New York law, service of process on a domestic corporation is governed by CPLR § 311, which provides that service upon a corporation shall be made by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service" or pursuant to N.Y. Business Corporation Law § 306.  N.Y. C.P.L.R. § 311(a)(1).  N.Y. Business Corporation Law § 306 in turn states that service on a domestic corporation can be satisfied by personally delivering duplicate copies of the process to the Secretary of State, who then sends the process by certified

5

mail "to such corporation, at the post office address, on file in the department of state, specified for the purpose." N.Y. Bus. Corp. L. § 306(b)(1). As explicitly stated in the statute "[s]ervice of process on such corporation shall be complete when the secretary of state is so served." N.Y. Bus. Corp. L. § 306(b)(1).

Here, the record indicates that: (1) on May 12, 2011, the Petitioners served copies of the Petition on the New York Secretary of State (Affidavit of Service, ECF No. 3); and (2) the Secretary of State mailed the Petition to the Respondent (Pick Aff., Ex. E). Thus, by effectuating service of the Petition through the Secretary of State, the Petitioners complied with their service obligations under New York law. The fact that the Respondent had an outdated address on file with the Secretary of State does not compel a different result. "[I]t is a corporation's obligation to keep on file with the Secretary of State the current address of an agent to receive service of process" and therefore "service of process on a corporation is deemed complete when the Secretary of State is served, regardless of whether such process ultimately reaches the corporate defendant". Cedeno v Wimbledon Bldg. Corp., 207 A.D.2d 297, 298, 615 N.Y.S.2d 40, 40–41 (1st Dep't 1994); see also Ameritek Constr. Corp. v Gas, Wash & Go, 247 A.D.2d 418, 419, 668 N.Y.S.2d 663, 664 (2d Dep't 1998) ("The respondent is itself responsible for the alleged failure to receive notice, since by its own admission it neglected to inform the Secretary of State of its current address for some five years"). Accordingly, the Respondent's motion to dismiss the Petition for insufficient service of process is denied.

**B. Whether the Assignment for the Benefit of Creditors Requires the Dismissal of the Petition and/or an Order Vacating the Arbitration Award**

The Respondent concedes that "there is no automatic stay applicable in an assignment proceeding". (Pick Reply Aff., ¶ 5.) Nevertheless, the Respondent argues that there is a "de facto stay or public policy under the Debtor and Creditor Law favoring the review and resolution

of all liabilities and assets of an assignor in a single proceeding under the supervision of the assignee and the Supreme Court". (Id.) Consequently, the Respondent contends that the Petitioners erred in commencing both the instant proceeding and the Underlying Arbitration rather than pursuing their claim for unpaid contributions through the Assignment Proceeding.

"A general assignment for the benefit of creditors is an assignment by a debtor transferring all of his or her property in general terms to an assignee in trust for all creditors of the debtor, or a voluntary transfer by a debtor of all his property to a trustee of his own selection, for administration, liquidation, and equitable distribution among his creditors." Compagnia Distribuzione Calzature v PSF Shoes, 206 A.D.2d 343, 344, 613 N.Y.S.2d 931, 932–33 (2d Dep't 1994); City of New York v. United States, 283 F.2d 829, 831–32 (2d Cir. 1960). "The intent of the Debtor and Creditor Law, as stated, is to obtain expeditious finality and payment to creditors of obligations and debts due them from the estate of the Assignor." Speciner v Chase Manhattan Bank, N.A., 103 Misc.2d 19, 20, 425 N.Y.S.2d 242, 243 (N.Y. Sup. 1980).

A general assignment "is distinguishable from a federal bankruptcy proceeding in that no discharge from the assignor's debts is obtainable in an assignment for the benefit of creditors." Freeman v. Marine Midland Bank-New York, 419 F. Supp. 440, 447 (E.D.N.Y. 1976); N.Y. Jur. 2d Creditor § 215 (2011) ("[A] general assignment may be viewed as a quasi-bankruptcy proceeding except for the fundamental factor of discharging a debtor from his debts."). Because a general assignment does not result in the discharge of the assignor's debts "[t]he creditor is not estopped from exhausting his legal remedies against the assignor". Swift & Co. v. Novotny, 28 N.Y.S.2d 562, 563 (N.Y. Cnty. Ct. 1941); see also Delta Trading Corp. v Kohn & Son Co., 28 Misc.2d 894, 215 N.Y.S.2d 607 (N.Y. Sup. Ct. 1961), Kay Mfg. Corp. v Weiss, 11 Misc.2d 164, 168 N.Y.S.2d 330 (N.Y. Sup. Ct. 1957).

7

Another notable and related difference between an assignment for the benefit of creditors and a federal bankruptcy proceeding is that New York law governing general assignments, unlike the federal bankruptcy law, does not impose an automatic stay on all litigation and arbitration proceedings when an assignment proceeding is commenced. See Swift & Co., 28 N.Y.S.2d at 563 (holding that there was no "support in law" for the contention that an assignment for the benefit of creditors operated to "stay any further action on the part of any creditor" but rather that "[t]he only effect of such an assignment is to prevent a judgment creditor from levying execution against any of the assignment property"); Mason Tenders Dist. Council Welfare Fund v. Logic Constr. Corp., 7 F. Supp. 2d 351, 353 (S.D.N.Y. 1998) (noting that a default judgment had been entered against the assignor-corporation for unpaid contributions to employee funds without addressing the propriety of entering that default during the pendency of an assignment proceeding); cf. Software Freedom Conservancy, Inc. v. Best Buy Co., Inc., No. 09-CV-10155, 2010 WL 2985320, at *2 n.25 (S.D.N.Y. July 27, 2010) (noting that a default judgment could be entered against the defendant despite the fact that it was undergoing an assignment for the benefit of creditors under California law because "[f]ederal bankruptcy law mandates an automatic stay of all other litigation once a bankruptcy proceeding has been initiated [but] [n]o such provision exists under California state law").

The Respondent is correct that public policy considerations tend to result in the dismissal of plenary actions in favor of assignments for the benefit of creditors. As eloquently explained in Hynes v Alexander, 2 A.D. 109, 37 N.Y.S. 527 (2d Dep't 1896):

> Where there is a special course of procedure, provided for a specific purpose, regulating certain proceedings, and adopted for the purpose of facilitating the disposition of matters cheaply and expeditiously, parties should be relegated to such method, and not be permitted a choice of tribunals, unless some substantial reason exists therefor, which should be specifically averred. In the case of

> insolvent assignments, the statute provides an expeditious and cheap method of procedure, where the rights of all creditors can be fairly protected, and the estate cheaply administered. Under such circumstances, the assignee ought not to be subjected to the vexatious trouble and burden of an action which leads, in the end, to an accounting, for which the statute provides, nor should the assigned estate be made subject to the costs and expense of an action and the inevitable waste which the fees of referees and other contingencies produce, as well as the costs of the action itself, unless there be exceptional grounds therefor; and such necessity ought to be clearly alleged.

Id. at 527–28.

Nevertheless, whether to impose a stay or dismiss a claim in favor of an assignment proceeding remains a matter of judicial discretion. This is because, although Debtor & Creditor Law § 20 states that the assignment court "shall have full jurisdiction to do all and every act relating to the assigned estate, the assignees, assignors and creditors", N.Y. Debtor & Cred. L. § 20, it "does not say that jurisdiction of the assignment court is exclusive". In re Hughes & Co., 9 Misc. 2d 14, 15, 167 N.Y.S.2d 570, 572 (N.Y. Sup. Ct. 1957). Compare id., 167 N.Y.S.2d at 572–73 (holding that the court "this court has, at the very least, power in its discretion not to stay the prosecution of a plenary suit against an assignee" and, after considering the public policy in favor of staying such actions, a claim by a foreign sovereign that an assignee had its funds constituted a "substantial reason" for departing from the usual rule of dismissing an action in favor of an assignment for the benefit of creditors); In re Jamaica Concrete Corp., 185 Misc. 655, 656–57, 57 N.Y.S.2d 877, 878–79 (N.Y. Sup. Ct. 1945) (denying a motion by an assignee to enjoin proceedings before the Unemployment Insurance Referee Section of the New York Department of Labor to fix the amount of a claim, rather than force the creditor to submit the claim to the assignment proceeding, because New York law had a specific mechanism in place to adjudicate the amount of the claim) with Faber Cement Block Co. v. Pauless Realty Corp., 425 F.2d 223, 224 (2d Cir. 1970) (stating that, in light of the fact that the assignment court was "the

logical forum to prevent piecemeal litigation of individual suits", the court was "disinclined to interfere with the orderly administration of the assignment in New York courts" and therefore affirmed the district court's order dismissing a creditors action to set aside as fraudulent a realty conveyance made by the debtor before filing an assignment for the benefit of creditors).

With respect to the instant proceeding, the Court finds that public policy reasons do not require the dismissal of the Petition to confirm the Arbitration Award because the "confirmation of an arbitration award 'is a summary proceeding that merely makes what is already a final arbitration award a judgment of the court.'" D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (quoting Florasynth, Inc. v. Pickholz, 750 F.2d 171, 176 (2d Cir. 1984)). Confirming the Arbitration Award will not allow the Petitioners to circumvent the Assignment Proceeding to enforce the judgment because "[a] general assignment prevents a judgment creditor from levying upon the property assigned to the assignee for creditors". N.Y. Jur. 2d Creditor § 235 (2011). After a court confirms an arbitration award, a petitioner-creditor "can present this claim to the assignee, who is obligated by law to accord that claim any priority to which it is entitled and, absent any priority, to distribute assets remaining after payment of priority claims ratably among the general unsecured creditors". Logic Const. Corp., 7 F. Supp. 2d at 357.

Thus, because the Petitioners will still need to submit the claim for unpaid contributions in the Assignment Proceeding to effectuate judgment, confirming the award would not interfere with the "orderly administration" of the estate. Id. at 359 (holding that when the plaintiffs, fiduciaries of employee benefit plans, obtained a default judgment for unpaid contributions against an employer corporation that was undergoing an assignment for the benefit of creditors "they exhausted their rights under ERISA with respect to unpaid benefit plan contributions and

10

are left with the mechanisms generally available to creditors for the enforcement of that judgment"); cf. Software Freedom Conservancy, Inc., 2010 WL 2985320, at *2 n.25 (holding that a default judgment could be entered against a defendant undergoing an assignment for the benefit of creditors under California law and that "Plaintiffs can file a claim for a share of [the defendant's] assets as creditors under the terms set forth in the Assignment Agreement").

In addition, with respect to the Underlying Arbitration, the Court does not need to reach the issue of whether it should have been stayed or dismissed in light of the Assignment Proceeding because the Respondent failed to preserve its objection to the arbitrability of the dispute.

As a general rule, "a party 'cannot remain silent, raising no objection during the course of the arbitration proceedings, and when an award adverse to him has been handed down complain of a situation of which he had knowledge from the first.'" See New York Hotel & Motel Trades Council v. Hotel St. George, 988 F. Supp. 770, 778 (S.D.N.Y. 1997) (quoting York Research Corp. v. Landgarten, 927 F.2d 119, 122 (2d Cir. 1991)). A challenge to the arbitrability of a dispute is a challenge to the arbitrator's jurisdiction. "[I]f a party explicitly preserves their objection to jurisdiction before the arbitrator, it will be allowed to challenge jurisdiction in a petition to vacate. . . . A simple statement of reservation of rights is not enough, however, but rather a 'forceful objection' is necessary to indicate an unwillingness to submit to arbitration." S&G Flooring, Inc. v. New York City Dist. Counsel of Carpenters Pension Fund, No. 09-CV-2836, 2009 WL 4931045, at *5 (S.D.N.Y. Dec. 21, 2009) (citing Nat'l Ass'n of Broadcast Employees & Technicians, AFL-CIO v. Am. Broadcasting Co, Inc., 140 F.3d 459 (2d Cir.1998); In the Matter of the Arbitration between Halcot Navigation Ltd. P'ship & Stolt-Nielsen Transp. Group,, 491 F. Supp. 2d 413, 418 (S.D.N.Y. 2007)).

In support of its motion to vacate the Arbitration Award, the Respondent submits copies of correspondence between the Assignee, counsel for the Petitioners, and an arbitrator named Aaron Shriftman. In this chain of correspondence, the Assignee objects to the Petitioners arbitrating a dispute rather than submitting it to the Assignment Proceeding. (Pick Aff., Ex. C.) However, this correspondence relates to a separate arbitration regarding the Respondent's alleged failure to notify employees of the shutdown and other alleged violations of the CBA. (See Opinion and Award of Arbitrator dated May 16, 2011, Pick. Aff., Ex. D.) Although the correspondence indicates that the Assignee communicated his objection to the Underlying Arbitration to counsel for the Petitioners, there is no indication that this objection was ever raised with Arbitrator Clarke. (See also Pick Reply Aff., ¶ 5 (stating that, after receiving notice of the Underlying Arbitration "the Assignee . . . pled with Petitioners' counsel to refrain from proceeding with the arbitration and to file a proof of claim so that it could be reviewed in the ordinary course").)

Accordingly, the Court denies the Respondent's motion to vacate the Arbitration Award. However, in holding that the Respondent waived its objection to the Underlying Arbitration, the Court takes no position on whether public policy considerations would have warranted a stay of the Underlying Arbitration, or any other arbitrations commenced by the Petitioners after the filing of the assignment for the benefit of creditors.

### III. PETITION TO CONFIRM THE ARBITRATION AWARD

Section 9 of the Federal Arbitration Act ("FAA") governs the entry of judgment by a federal district court on an arbitration award. Section 9 of the FAA states that a court "must" confirm an arbitration award "unless" it is vacated, modified, or corrected. It is well established that an arbitrator's decision is entitled to "strong deference" by the courts. Porzig v. Dresdner,

Kleinwort, Benson, N. Am. LLC, 497 F.3d 133, 138 (2d Cir. 2007); Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S, 333 F.3d 383, 388 (2d Cir. 2003); see also Folkways Music Publishers, Inc. v. Weiss, 989 F.2d 108, 111 (2d Cir. 1993) ("Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."). Arbitrators are not required to document their reasoning, and "[a] court is not authorized to revisit or question the fact-finding or the reasoning which produced the award". See Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp., 143 F.3d 704, 716 (2d Cir. 1998). Under this deferential standard "[o]nly a barely colorable justification for the outcome reached' by the arbitrator is necessary to confirm the award" and "the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." D.H. Blair & Co., Inc. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006) (internal quotation marks and citations omitted).

The statutory grounds for vacating an award are found in section 10 of the FAA, which provides that the district court may only vacate an arbitrator's award:

> (1) where [it] was procured by corruption, fraud, or undue means; (2) where there was evident partiality or corruption in the arbitrators ...; (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a)(1)–(4). In addition to the conditions for vacating an arbitration award enumerated in section 10, the Second Circuit has held that a court can vacate an arbitration award if it was arrived at in "manifest disregard of the law." T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339-40 (2d Cir. 2010).

13

Here, the only objection raised by the Respondent to the Arbitration Award was the arbitrability of the dispute. However, as previously held, the Respondent waived this objection by failing to raise it in the Underlying Arbitration. As the Second Circuit held in National Association of Broadcast Employees & Technicians v. American Broadcasting Co., Inc., 140 F.3d 459 (2d Cir. 1998), "[i]f arbitrability is upheld after the award, there is no reason for a court not to confirm the arbitrator's award". Id. at 462; see also 9 U.S.C. § 9 ("[U]pon an application for an order to confirm an arbitration award, the court must do so unless the award is vacated, modified, or corrected under § 10 or § 11."). Accordingly, the Court confirms the Arbitration Award.

Finally, the Petitioners seek an award of attorneys fees and costs associated incurred in bringing the instant action. Section 502(g) of ERISA permits plaintiffs to recover their reasonable attorney's fees and costs in association with successful actions to recover delinquent contributions. See 29 U.S.C. § 1132(g)(2)(D). However, this does not necessarily mean that a successful party is also entitled to its costs and attorney's fees in bringing a petition to confirm an arbitration award.

With respect to costs, "[c]ourts routinely make awards [for costs] pursuant to [ERISA] in confirmation proceedings." Laundry, Dry Cleaning Workers & Allied Industries Health Fund v. Stainless Partners, Inc., Nos. 07-CV-3542, 07-CV-3545, 2007 WL 3232260, at *4 (E.D.N.Y. Oct. 31, 2007)) (collecting cases). This is consistent with the general principle that, in most civil suits, "costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Accordingly, the Petitioner is entitled to their costs incurred in commencing this action.

However, with respect to attorney's fees, "[i]n a federal action, attorney's fees cannot be recovered by the successful party in the absence of statutory authority for the award." Int'l Chem. Workers Union, Local No. 227 v. BASF Wyandotte Corp., 774 F.2d 43, 47 (2d Cir. 1985). While the Federal Arbitration Act does not provide for recovery of attorney's fees, "a court may, in the exercise of its inherent equitable powers, award attorney's fees when opposing counsel acts in bad faith [or when] a party opposing confirmation of an arbitration award 'refuses to abide by an arbitrator's decision without justification.'" N.Y. City Dist. Council of Carpenters Pension Fund v. E. Millenium Constr., Inc., No. 03-CV-5122, 2003 WL 22773355, at *2 (S.D.N.Y. Nov. 21, 2003) (quoting Int'l Chemical Workers Union Local No. 227, 774 F.2d at 47). Here, the Court finds that counsel for Respondent's did not act in bad faith in opposing the confirmation of the Arbitration Award and therefore the Petitioners are not entitled to their attorney's fees.

## IV. CONCLUSION

For the foregoing reasons, it is hereby:

**ORDERED**, that the Respondent's motion to dismiss the Petition and/or vacate the Arbitration Award is denied, and it is further

**ORDERED**, that the Petition to Confirm the Arbitration Award is granted, and it is further

**ORDERED**, that the Petitioners' request for costs incurred in commencing this action is granted, and it is further

**ORDERED**, that the Petitioners' request for attorney's fees incurred in litigating this action is denied, and it is further

15

**ORDERED**, that the Petitioners are directed to submit a proposed judgment including the amount in the Arbitration Award and the reasonable costs incurred in commencing this action within ten days of the date of this order.

**SO ORDERED.**
Dated: Central Islip, New York
December 1, 2011

                                                               */s/ Arthur D. Spatt*
                                                               ARTHUR D. SPATT
                                                         United States District Judge